FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
12/14/2020 11:20 AM
KATHLEEN VIGIL CLERK OF THE COURT
Breanna Aguilar

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT**

**BRANDON WAGNER,**
           **Plaintiff,**

**v.**                                                                    **D-101-CV-2020-01058**

**NEW MEXICO DEPARTMENT OF**
**CORRECTIONS, DANIEL SALAZAR**
**and WEXFORD HEALTH SOURCES, Inc.,**
          **Defendants.**

## FIRST AMENDED COMPLAINT FOR FAILURE TO PROVIDE MEDICAL TREATMENT, VIOLATION OF CIVIL RIGHTS AND DECLARATORY JUDGMENT

**THE PLAINTIFF Brandon Wagner,** by and through counsel of record, for his Complaint for Failure to Provide Medical Treatment, Violation of Civil Rights under 42 U.S.C. § 1983, and Declaratory Judgment states as follows:

### INTRODUCTION

This matter arises from the failure of Defendants to provide Plaintiff with medical treatment while as an inmate incarcerated at the Penitentiary of New Mexico. Plaintiff brings claims as against the medical provider Defendant for its failure to provide Plaintiff with needed medical and dental care. Plaintiff brings claims for Civil Rights violations as against the State Defendants for barring Plaintiff from receiving medically necessary treatment based upon unrelated and vague non-medical criteria, and requests the Court Declare application of the policy as unconstitutional.

This First Amended Complaint is filed to combine claims brought in this matter and D-101-CV-2020-01057, to correct the named Defendants, and for violation of Civil Rights and Declaratory Judgment not brought in the original Complaint.

1

## JURISDICTION AND VENUE

1. The Plaintiff Brandon Wagner is an inmate held in custody by the New Mexico Department of Corrections.

2. At all times relevant hereto, Plaintiff was housed in the Level V unit of the Penitentiary of New Mexico.

3. The Defendant New Mexico Department of Corrections is an agency of the State of New Mexico, which at all times pertinent hereto acted through its employees, agents and contractors who operate its detention facilities located within the State of New Mexico.

4. The Defendant Daniel Salazar is a resident of New Mexico; at all times relevant hereto Defendant Salazar acted in his official capacity as Deputy Warden, Level V of the Penitentiary of New Mexico.

5. The Defendant Wexford Health Services, Inc. ("Wexford") is a Foreign Profit Corporation in good standing in the State of New Mexico, incorporated in the State of Florida.

6. Defendant Wexford is the independent contractor which provides primary medical services for inmates housed at the Penitentiary of New Mexico, and at all times pertinent hereto acted through its employees and agents who provide health care services to inmates at the Penitentiary of New Mexico.

7. All circumstances that form the basis of this lawsuit occurred in Santa Fe County, New Mexico.

8. State and federal courts share concurrent jurisdiction over Section 1983 claims for the denial of federal constitutional rights. *Carter v. City of Las Cruces*, 1996-NMCA-47, ¶5, 121 N.M. 580, 582, citing to *Martinez v. California*, 444 U.S. 277, 283 n.7, 62 L. Ed. 2d 481, 100 S. Ct. 553 (1980).

9.  Title 42 U.S.C. §1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

10. Jurisdiction and Venue is proper before the First Judicial District Court, Santa Fe County, New Mexico.

## FACTS

11.  In the case of *State v Brandon L. Wagner,* D-905-CR-2018-00198, a Judgment and Sentence was entered March 11, 2019, which sentenced Brandon Wagner for a period of confinement within the New Mexico Department of Corrections.

12. Plaintiff was diagnosed with Hepatitis-C in late 2008.  At all times during his incarceration, Plaintiff's medical record reflects that he has Hepatitis-C.

13. At all times relevant hereto, the New Mexico Department of Corrections and Wexford were aware that Plaintiff suffered from Hepatitis-C.

14. In response to a request for medical treatment for treatment for his Hepatitis-C, Plaintiff was seen by a nurse practitioner employee of Defendant Wexford on November 18, 2019.

15. At the time Plaintiff was seen by the Wexford nurse practitioner, the results of his blood test indicated that he was in need of Hepatitis-C medical treatment.

16. Plaintiff was intentionally denied medical treatment by the Wexford nurse practitioner on the basis that he did not have "clear conduct" and his liver was not "damaged enough."

3

17. Based upon the failure to be provided medical treatment, on December 30, 2019, Plaintiff filed an informal complaint.  The resolution of the complaint was that Plaintiff was required to have "clear conduct" for one year in order to qualify for treatment for Hepatitis-C.

18. In early February 2020, Plaintiff filed a formal grievance, requested that he be provided Hepatitis-C treatment, and that any policy barring his receipt of medically necessary Hepatitis-C treatment be changed, on the basis the policy was unconstitutional.

19. On 2/20/2020, Plaintiff's formal grievance was denied, solely on the basis that he did not have "clear conduct" for a one-year period of time prior to his request.

20. The 2/20/20 Response to Plaintiff's grievance reflected his "last misconduct report is dated on or around 8/27/2019, for possession or use of dangerous drugs."

21. Plaintiff appealed the formal grievance on 2/25/2020.

22. On 3/3/2020, Director of Adult Prisons John Gay issued a decision resolving Plaintiff's appeal, which upheld the determination that Plaintiff was required to have one year of "clear conduct" before he was eligible for Hepatitis-C medical treatment. (Exhibit 1 attached).

23. On May 12, 2020, Plaintiff filed this matter - as well as a complaint in D-101-CV-2020-01057 - concerning Wexford's failure to provide him with dental treatment.

24. On 8/18/2020, Plaintiff submitted a second informal complaint requesting Hepatitis-C treatment, as he was aware that his blood had reached dangerous levels, indicating his body was suffering irreparable harm from lack of Hepatitis-C treatment.

25. Plaintiff's second informal complaint was answered on 8/25/2020, with the statement that "clear conduct" for one year is required in order to receive medical treatment for Hepatitis-C. The response provided to Plaintiff included the Department of Corrections "FY2020 Hepatitis C Treatment Selection Criteria and Guidelines." (Exhibit 2 attached).

26. At all times that Plaintiff sought medical treatment for Hepatitis-C, he met all criteria listed, except for 3.b "no major infractions in the past 12 months involving injection drugs."

27. Plaintiff began receiving Hepatitis-C medical treatment on November 9, 2020, which was nearly one year after his initial request.

28. During the one-year period Plaintiff did not receive any Hepatitis-C treatment, he suffered from a number of common untreated Hepatitis-C side effects such as flu-like symptoms, arthritis-like pain in his joints, gastrointestinal problems, insomnia and depression.

29. Due to the delay in receiving appropriate medical care, Plaintiff has suffered irreparable and irreversible harm to his liver.

30. Plaintiff had submitted a medical treatment request in early November 2019 for dental treatment, as a tooth was chipped, causing him pain.  He was not seen by Wexford medical providers for this dental problem.

31. At the end of November 2019, Plaintiff's chipped tooth broke off at the gum line, leaving him with a hole in his mouth and in substantial pain.

32. During December 2019, Plaintiff submitted four (4) medical requests for dental treatment as he was in continuous and substantial pain due to the broken tooth.  At no time during December 2019 was Plaintiff seen by Wexford medical providers for this dental problem.

33. On December 30, 2019, Plaintiff submitted an informal complaint.  This was finalized in mid-January 2020 with the recommendation that Plaintiff file a grievance.

34. On 1/13/2020 Plaintiff filed a formal grievance regarding the failure to provide him with dental treatment.  He was finally seen for dental care on February 1, 2020.

35. For more than three months, Plaintiff suffered continuing pain and discomfort due to the failure of Wexford to provide Plaintiff appropriate dental care.

5

36. On 4/14/2020, Director of Adult Prisons John Gay issued a decision closing Plaintiff's appeal, as by 4/14/2020 Plaintiff had received dental treatment. (Exhibit 3 attached).

37. Defendant exhausted all administrative remedies as required under NMSA §33-2-11(B) prior to bringing this First Amended Complaint.


**Claims for Relief**

**Count I - Failure to Provide Medical Treatment**
**(Wexford Defendant)**

38. Plaintiff incorporates all preceding paragraphs as if set forth herein in full.

39. Defendant Wexford is vicariously liable for the actions and inactions of its independent contractors and/or employees who provide medical and dental treatment to inmates incarcerated at the Penitentiary of New Mexico.

40. The independent contractors and/or employees of Defendant Wexford are under the duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified health care providers practicing under similar circumstances.

41. The independent contractors and/or employees of Defendant Wexford had a heightened duty to provide reasonable, proper and adequate medical care to Plaintiff while he is incarcerated as an inmate at the Penitentiary of New Mexico.

42. It is well established in medical literature that Hepatitis C is a liver infection that left untreated can result in serious, life-threatening health problems such as cirrhosis and liver cancer.

43. It is well established in medical literature that individuals with chronic Hepatitis C can often have no symptoms and not feel sick, but when symptoms appear, they often are a sign of advanced liver disease.

6

44. Plaintiff demonstrated classic symptoms of chronic Hepatitis-C, which demonstrated the obvious need for appropriate medical treatment.

45. The Wexford medical provider Defendants knew that the appropriate medical protocol for treating the symptoms displayed by Plaintiff required referral or minimal diagnostic testing to confirm and diagnosis his ailments and known Hepatitis-C, yet he was knowingly denied medical treatment.

46. Plaintiff's worsening medical condition due to his Hepatitis-C demonstrated the obvious need for appropriate medical treatment, but he was not knowingly not provided any such treatment for more than one year.

47. Plaintiff's continuously-worsening medical condition demonstrated an obvious risk to his health and life if he was not provided appropriate medical care.

48. The Wexford medical providers were made aware and knew that Plaintiff's health condition was worsening and that he required immediate medical attention and treatment, the denial of which presented a substantial risk of harm to Plaintiff's health and life.

49. Despite being made aware and knowing that Plaintiff's health condition was worsening, that he required medical attention and treatment and that failure to provide him with such medical attention and appropriate care posed a significant risk to his health and life, the Wexford medical providers on multiple occasions intentionally disregarded that substantial risk of harm and recklessly, knowingly or intentionally denied and delayed getting Plaintiff medical care, and outright denied Plaintiff the medical care he had requested.

50. The failure of the Wexford Defendant medical providers to obtain needed medical and dental treatment for Plaintiff caused him substantial harm that was due solely and directly to the Defendant's failure.

51. The more timely receipt of medical treatment would have minimized or prevented harm to Plaintiff.

52. The Wexford Defendant medical providers did not have any justifiable medical reason for denying Plaintiff medical attention and/or the authority to deprive Plaintiff from receiving medical attention and dental care.

53. The Wexford medical providers negligently breached their duty to provide reasonable, proper and adequate medical and dental care to Plaintiff.

54. The Wexford Defendant medical providers both departed from the recognized standards of medical practice and neglected to do something required by those standards,

55. The negligent failure of the Wexford Defendant medical providers to provide adequate medical and dental care to Plaintiff constitutes medical malpractice.

56. The Wexford Defendant medical providers departure from the recognized standards of medical practice and their neglect to do something required by those standards constitutes medical malpractice.

57. The medical malpractice committed by the Wexford Defendant medical providers directly caused injuries to Plaintiff.

58. Plaintiff is entitled to an award of damages for Defendants' medical malpractice.

## Count II - Violation of Civil Rights
### (New Mexico Department of Corrections)

59. Plaintiff incorporates all preceding paragraphs as if set forth herein in full.

60. Well-established rights exist under Article II, Section 13 of the New Mexico Constitution and under the Eighth and Fourteenth Amendments to the United States Constitution prohibiting the cruel and unusual treatment of individuals held in custody.

61. "The State has an obligation, under the Eighth Amendment and state law, to provide adequate medical care to those whom it has incarcerated." *West v. Atkins*, 487 U.S. 42, 43 (1988). "In the prison context, medical care is within the exclusive prerogative of the State, in that the State is obligated to provide medical service for its inmates and has complete control over the circumstances and sources of a prisoner's medical treatment." *Id*. at 47.

62. "When one party is in the custodial care of another, as in the case of a jailed prisoner, the custodian has the duty to exercise reasonable and ordinary care for the protection of the life and health of the person in custody." *Methola v. County of Eddy*, 1980-NMSC-145, ¶ 23, 95 N.M. 329.

63. "A deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th. Cir. 2005).

64. As a "convicted prisoner" during the relevant times giving rise to his claims brought in this case, Plaintiff was entitled to protection regarding medical attention under the Eighth Amendment.

65. The Defendant New Mexico Department of Corrections is required to "make such rules and regulations for the government, discipline and police of the penitentiary, and for the punishment of the prisoners confined therein, not inconsistent with the law." NMSA 1978, §33-2-10.

9

66. As the Secretary of the Department of Corrections, John Gay is responsible for ensuring compliance with New Mexico and federal law pertaining to the provisions of medical services for inmates housed in all Department of Corrections' prison facilities.

67. As a Warden of the Penitentiary of New Mexico, Defendant Salazar is responsible for ensuring inmates housed at the Level V unit of the Penitentiary receive appropriate medical treatment.

68. The actions of John Gay and Defendant Salazar in enforcing an internal policy resulted in the denial of necessary medical care to Plaintiff.

69. Plaintiff's worsening medical condition due to his Hepatitis-C demonstrated the obvious need for appropriate medical treatment, but he was not provided any such treatment for more than one year due to the actions of the New Mexico Department of Corrections, acting through its Secretary and employees, who knowing his medical needs intentionally denied treatment.

70. The New Mexico Department of Corrections was made aware and knew that Plaintiff's health condition was worsening and that he required immediate medical attention and treatment, the denial of which presented a substantial risk of harm to Plaintiff's health and life.

71. Despite being made aware and knowing that Plaintiff's health condition was worsening, that he required medical attention and treatment and that failure to provide him with such medical attention and appropriate care posed a significant risk to his health and life, the New Mexico Department of Corrections on multiple occasions intentionally disregarded that substantial risk of harm and recklessly, knowingly or intentionally denied and delayed getting Plaintiff medical care.

72. The New Mexico Department of Corrections did not have any justifiable medical reason for denying Plaintiff medical attention and/or the authority to deprive Plaintiff from receiving medical attention.

73. The NM Corrections Department has adopted its policy CD-176200.  (Exhibit 4 attached).

74. NM Department of Corrections policy CD-176200 recognizes that 75-85% of Hepatitis-C infections result in chronic liver disease, and that vaccinations are recommended for all persons with Hepatitis-C.  (Exhibit 4, page 2).

75. NM Department of Corrections policy CD-176200 recognizes that "Hepatitis C is a liver disease caused by the hepatitis C virus (HCV). It damages the liver and causes it to not work well. Most people with hepatitis C will not recover on their own without treatment and will develop chronic (long term) hepatitis C which can lead to cirrhosis, liver cancer, and liver failure." (Exhibit 4, page 8).

76. The NM Department of Corrections requires inmates to sign an "informed consent and contract" before being provided with medical treatment for Hepatitis-C. (Exhibit 4, page 7).

77. Nowhere in its policy CD-176200, or the "informed consent and contract" is a requirement for inmates to be required to have one year of "clear conduct" to be eligible for receiving Hepatitis-C treatment.

78. The sole basis for the New Mexico Department of Corrections denying Plaintiff needed medical care was the one-year period contained in the Department's "FY 2020 Hepatitis C treatment Selection Criteria and Guidelines." (Exhibit 3 attached).  This is not a formal policy adopted by the New Mexico Corrections Department.

79. The one-year period contained in the Criteria and Guidelines is inconsistent with the law.

11

80. Requiring inmates to sign a contract in order to receive medically necessary treatment is inconsistent with the law.

81. Plaintiff had not been requested by the NM Department of Corrections to sign an "informed consent and contract" prior to being denied medical treatment.

82. The failure of the New Mexico Department of Corrections to permit Plaintiff to obtain needed medical treatment caused him substantial harm that was due solely and directly to the Defendant's reliance upon its "FY 2020 Hepatitis C treatment Selection Criteria and Guidelines.

83. The more timely receipt of medical treatment would have minimized or prevented harm to Plaintiff.

84. The failure of the New Mexico Department of Corrections to permit Plaintiff to obtain needed medical treatment for Plaintiff demonstrates a deliberate indifference to his serious medical needs and to an obvious risk to his health and life.

85. The New Mexico Department of Corrections intentionally and recklessly denied Plaintiff needed medical attention, which constituted cruel and unusual punishment.

86. The delay caused by the New Mexico Department of in permitting Plaintiff to obtain needed medical treatment for Plaintiff demonstrates a deliberate indifference to his serious medical needs and to an obvious risk to his health and life.

87. Defendant New Mexico Department of Corrections knew it had no reasonable cause to justify its actions and intentionally proceeded without legal authority solely because Plaintiff was an inmate confined in a Department of Corrections prison.

88. Plaintiff has suffered harm due directly to the actions of the Defendant New Mexico Department of Corrections.

## Count III - Declaratory Judgment

89. Plaintiff incorporates the preceding paragraphs as if set forth herein in full.

90. The New Mexico Department of Corrections is unequivocally required to obtain medical treatment of inmates incarcerated in its prison facilities.

91. A controversy exists between Plaintiff and Defendants concerning the applicability of a Department of Corrections "Criteria and Guidelines" and policy that barred inmates from receiving medical treatment.

92. Plaintiff has been prejudiced in not being able to receive necessary medical treatment based upon the Department of Corrections "Criteria and Guidelines" and policy.

93. Pursuant to NMSA 1978 § 44-6-1 et seq. an actual controversy exists such that this Court has jurisdiction to declare rights, status and other legal relations with respect to the parties' claims and interests.

94. A declaratory judgment by this Court will terminate the existing controversy between the Defendants concerning the right of Plaintiff - and other similarly situated inmates - to receive medical treatment for Hepatitis-C.

95. The Court should determine that the New Mexico Corrections Department "Criteria and Guidelines" is unenforceable as contrary to well-established federal law regarding medical care required to be provided to inmates.

96. The Court should determine that the New Mexico Corrections Department policy CD-176200, to the extent Brandon Wagner is required to sign a "contract" in order to obtain Hepatitis-C treatment is unenforceable as contrary to well-established federal law regarding medical care required to be provided to inmates.

**WHEREFORE**, the Plaintiff Brandon Wagner requests that the Court:

A. Find that Defendant Wexford failed to provide Plaintiff with medical care, in violation of the Eighth Amendment; and,

B. Find that the New Mexico Department of Corrections failed to provide Plaintiff with medical care, in violation of the Eighth Amendment; and,

C. Determine that the New Mexico Corrections Department "Criteria and Guidelines" is unenforceable as contrary to well-established federal law regarding medical care required to be provided to inmates.

D. Determine that "contract requirement" within the New Mexico Department of Corrections Policy 176200 is unenforceable as contrary to well-established federal law regarding medical care required to be provided to inmates with Hepatitis-C; and,

E. Enter its Order consistent with the above requests; and,

F. Award Plaintiff his attorneys fees incurred under 42 USC § 1988; and

G. Enter such further relief the Court deems just and appropriate.

Respectfully Submitted,
Lakins Law Firm, P.C.

Charles N. Lakins, Esq.
PO Box 91357
Albuquerque, NM 87199
(505) 404-9377

**<u>Certificate of Service</u>**

I, Charles N. Lakins, do hereby certify that on the 14th day of December 2020 this *First Amended Complaint* was served on all counsel of record utilizing the Odyssey e-filing system.

Charles N. Lakins, Esq.

14



# NEW MEXICO
## CORRECTIONS DEPARTMENT

Secretary
Alisha Tafoya Lucero

4337 State Road 14, Santa Fe, NM 87508   -   PO Box 27116, Santa Fe, NM 87502-0116
Phone: 505.827.8645   Fax: 505.827.8533   **www.cd.nm.gov**

Brandon Wagner #66371
PNM
Grievance Appeal S-20-02-07

Denied

This is in response to your grievance appeal you filed claiming that you are being denied the Hep-C treatment due to not having clear conduct and levels not being high enough. Your relief requested is to be treated for Hep-C and change the policy of having clear conduct.

The initial investigation indicates you were informed of the results by the grievance officer of the investigation in regards to the issues noted. The grievance officer response is correct in the decision to you.

We are in agreement with the decision and your grievance has failed to provide any additional evidence to support your claim; therefore this grievance appeal is denied. Your relief requested is denied.

You exhausted your administrative remedies.

John Gay, Director of Adult Prisons

3/3/2020
Date

**Exhibit**
**1**

Courage Res        Ethics Dedication



# NEW MEXICO
## CORRECTIONS DEPARTMENT

**Secretary**
Alisha Tafoya Lucero

4337 State Road 14, Santa Fe, NM 87508   -   PO Box 27116, Santa Fe, NM 87502-0116
Phone: 505.827.8645   Fax: 505.827.8533   www.cd.nm.gov

---

New Mexico Corrections Department (NMCD) FY2020 Hepatitis C Treatment Selection Criteria and Guidelines

Hepatitis C virus (HCV) infects and damages the liver. HCV is primarily transmitted through blood to blood contact. In the prison system this is usually through sharing needles to inject drugs or through tattooing. HCV can also be transmitted through sexual contact or perinatally from mother to baby, but these modes of transmission are relatively inefficient and account for a small percentage of cases.

According to the Centers for Disease Control and Prevention (CDC), 2.7-3.9 million Americans have chronic HCV infection. According to the New Mexico Department of Health, an estimated 53,000, or 2.5% of the New Mexico state population, are chronically infected.

There are 6 genotypes of HCV (genotypes 1-6). Genotypes 1 and 3 are the most common genotypes in New Mexico, with genotype 1 comprising approximately 70% of infections. Some people who are infected will spontaneously clear the virus. However, between 70-85% of people infected with HCV will develop chronic infection.

Not all state corrections departments conduct HCV screening of inmates at intake, which may explain why other states report lower rates of HCV positivity among their inmate populations. As of June 2018, NMCD incarcerates approximately 7,300 inmates, of which about 45% are HCV antibody positive during any given month. Upon intake, every inmate is tested for HCV antibodies. Since August of 2017, all HCV antibody positive inmates undergo reflex confirmatory testing with a nucleic acid amplification test (NAAT).

NMCD and Centurion, NMCD's inmate healthcare vendor, have partnered with Project ECHO at the University of New Mexico to evaluate and treat HCV infected inmates. NMCD has maintained a relationship with Project ECHO for this purpose since 2004. The goal of the ongoing project is to treat as many inmates as possible, given available resources, with the priority of identifying and treating the most advanced cases. Patients with advanced liver disease, cirrhosis, advanced fibrosis or serious extra-hepatic manifestations of HCV are prioritized for treatment during incarceration.

To be considered for treatment, inmates must meet security criteria, be able to provide informed consent and demonstrate a willingness and ability to comply with daily medication dosing. Inmates must have at least 6 months remaining on their sentence so that treatment and a sustained viral response (SVR) test, or "test of cure," can be completed prior to release.

Inmates with a disciplinary history that includes major infractions involving injections drugs are not eligible for treatment consideration until 12 months have elapsed without a major infraction.

Treatment is offered at every facility that has 24-hour medical coverage and offers directly observed therapy (DOT) for medication administration. DOT is required to assure that all medication doses are being taken as directed.

Patient-inmate Selection Guidelines:
Patients with confirmed HCV infection and **ANY** of the following should be presented to HCV Corrections teleECHO for treatment consideration:

1. Patients with confirmed HCV infection with cirrhosis or advanced fibrosis. Patients should be considered to have cirrhosis or advanced fibrosis if any of the following laboratory, radiographic or clinical findings are present:

---

**C**ourage **R**es[ ]thics **D**edication

Exhibit
2

   a.   Presence or history of ascites or esophageal varices

   b.   Platelet count <150,000

   c.   APRI score $\geq$ 1.0 (utilize AST upper limit of normal of 40 for calculating APRI)

   d.   FIB-4 $\geq$ 3.25

   e.   Fibrosure $\geq$ 0.72

   f.   Imaging with evidence of cirrhosis (nodular contour of the liver or presence of portal hypertension)

   g.   Liver biopsy with F3 or F4 fibrosis

   h.   Transient elastography consistent with advanced fibrosis/cirrhosis

2.   Patients with confirmed HCV infection and any potential extra-hepatic complications of HCV, including:

   a.   Type 2 or 3 essential mixed cryoglobulinemia with end-organ manifestation (e.g., vasculitis)

   b.   Membranoproliferative glomerulonephritis

   c.   Renal dysfunction

   d.   Proteinuria

   e.   Lymphoma

   f.   Diabetes mellitus

   g.   Peripheral neuropathy

   h.   Chronic arthralgias

   i.   Debilitating fatigue

3.   Patients with confirmed HCV infection and the following co-infections or circumstances which are high-risk for accelerated progression of liver disease or other complications:

   a.   Organ transplant recipients

   b.   HIV coinfection

   c.   Hepatitis B coinfection

   d.   ALT $\geq$ 10 time the upper limit of normal

<u>Patient-inmate Security Guidelines</u>:

    a.   At least 6 months minimum remaining on incarceration

    b.   No major infractions in the past 12 months involving injection drugs

<u>Priority Consideration for Case Presentation to ECHO of Patient-inmates with Confirmed HCV Infection:</u>

**Priority 1**
- ☐ Patients with evidence of cirrhosis or advanced fibrosis
- ☐ Liver transplant candidates or recipients
- ☐ Patients with renal failure
- ☐ Patients with lymphoma
- ☐ Patients with cryoglobulinemic vasculitis
- ☐ Patients who are organ transplant recipients
- ☐ Patients with HBV or HIV co-infection
- ☐ Patients receiving immunosuppressants
- ☐ Patients on HCV medication upon arrival at NMCD

**Priority 2**
- ☐ Patients with APRI score of 1.0 or greater (greater likelihood of hepatic fibrosis or cirrhosis)
- ☐ Patients with ALT> 200 (in chronic HCV infection)
- ☐ Patients with co-morbid liver disease, i.e. steatohepatitis or hemochromatosis

**Priority 3**
- ☐ Patients with stage 2 Fibrosis
- ☐ Patients with APRI score of >0.7 to <1.0
- ☐ Patients with co-morbid diabetes mellitus

**Priority 4**
- ☐ Patients with stage 0-1 fibrosis
- ☐ All other cases of HCV infection

# NEW MEXICO
## CORRECTIONS DEPARTMENT

Secretary
Alisha Tafoya Lucero

4337 State Road 14, Santa Fe, NM 87508  -  PO Box 27116, Santa Fe, NM 87502-0116
Phone: 505.827.8645   Fax: 505.827.8533   www.cd.nm.gov

Brandon Wagner #66371
PNM
Grievance Appeal S-20-02-08

Resolved

This is in response to your grievance appeal you filed claiming that you are being denied proper dental care. Your relief requested is for your tooth to be fixed.

The initial investigation indicates you were informed of the results by the grievance officer of the investigation in regards to the issues noted. The grievance officer response is correct in the decision to you. As a follow up, you were seen for this issue and the care plan was completed.

We are in agreement with the decision and your grievance has failed to provide any additional evidence to support your claim; therefore this grievance appeal is resolved.

You exhausted your administrative remedies.

John Gay, Director of Adult Prisons

4/14/2020
Date

Courage Responsibility Ethics Dedication

Exhibit
3



# NEW MEXICO CORRECTIONS DEPARTMENT

*"We commit to the safety and well-being of the people of New Mexico by doing the right thing, always."*
**C**ourage **R**esponsibility **E**thics **D**edication - **CRED**ibly serving the public safety of New Mexico

| ISSUE DATE: | 04/19/90 | REVIEWED: | 12/31/18 |
|---|---|---|---|
| EFFECTIVE DATE: | 04/19/90 | REVISED: | 02/21/18 |

**CD-176200**

TITLE: **Management of Acute and Chronic Infection Viral Hepatitis**

## AUTHORITY:

    A.   NMSA 1978, Section 33-1-6.
    B.   Policy CD-010100

## REFERENCE:

A.      ACA Standard 2-CO-4E-01, Standards for the Administration of Correctional Agencies, 1993.

B.      ACA Standards 4-4356 Standards for Correctional Institutions 4th Edition.

C.      Federal Bureau of Prisons, Clinical Practice guidelines, March 2013.

## PURPOSE:

To provide information to staff and inmates necessary for the appropriate prevention and medical management of acute hepatitis A, and to establish standards of care and clinical guide lines for the chronic hepatitis B and C.

The New Mexico Corrections Department (NMCD) guidelines for screening, testing, counseling, evaluation and treatment are based on the most recent information from the National Institute of Health (NIH), Centers for Disease Control and Prevention (CDC) and other nationally recognized scientific literature.

The Federal Bureau of Prisons (BOP) clinical practice guideline is based upon recommendations of NIH and CDC, as well as current scientific research from a wide variety of sources, and is the standard adopted by NMCD for the identification, evaluation and treatment of hepatitis.

As the BOP clinical practice guideline is updated to reflect new scientific evidence, the NMCD policy will be revised accordingly.

In addition to requiring the contract medical provider to develop protocols consistent with the BOP clinical practice guideline, this NMCD protocol provides specific procedures for screening, testing, notification, and counseling inmates with hepatitis C.

## APPLICABILITY:

    All employees of NMCD, contracted employees and facilities housing NMCD inmate patients will provide this standard of care.

Exhibit
4

**FORMS:**

    A. Hepatitis C Consent form (*CD-176201.1*)
    B. Hepatitis B and Hepatitis C form *(CD-176201.2)*

**ATTACHMENTS:**

    None

**DEFINITIONS:**

A. *Hepatitis A*:  is caused by the hepatitis A virus (HAV) and produces self-limited liver inflammation. HAV is a fecal-oral pathogen and is usually transmitted by ingesting food or water that has been contaminated by someone who is infectious but can also be transmitted from an infectious person during sexual intercourse or person-to-person if personal hygiene is poor. Acute infection confers immunity and chronic infection does not occur. HAV is vaccine-preventable and vaccination is recommended for patients with HBV, HCV or HIV co-infection or other chronic liver disease.

B. *Hepatitis B:* is caused by hepatitis B virus (HBV) and is transmitted by exposure to blood or infectious body fluids (e.g., semen, vaginal fluids, saliva) of infected persons. Approximately 90% of HBV infections in adults produce acute liver inflammation and result in immunity. Approximately 10% of HBV infections in adults result in chronic liver disease. HBV is vaccine-preventable and vaccination is recommended for all persons who are susceptible to HBV.

C. *Hepatitis C:* is caused by hepatitis C virus (HCV) and is transmitted by blood-to-blood contact between infected and non-infected persons. Approximately 75-85% of HCV infections result in chronic liver disease.  Approximately 15-25% of persons with HCV clear the virus spontaneously within 6 months of infection.  HCV is not vaccine-preventable.  Vaccinations for HAV and HBV are recommended for all persons with HCV infection.

D. *Other Viral Hepatitides:* Other viruses have been detected which cause or contribute to hepatitis (hepatitis D, hepatitis E, and hepatitis G). These are not clinically significant in the US incarcerated population.

E. *Clinical Practice Guideline***:** Systematically developed, science-based statement designed to assist practitioner and patient with decisions about appropriate health care for specific clinical circumstances.

**POLICY: [2-CO-4E-01]**

    Management of hepatitis A, B, and C in inmates includes procedures as identified in the communicable disease and infection control program. In addition, the program for hepatitis management shall include procedures for: **[4-4356]**

- When and where inmates are to be tested/screened

- Hepatitis A and B immunization, when applicable

- Treatment protocols

- When and under what conditions offenders are to be separated from the general population

_____          12/31/18
David Jablonski, Secretary of Corrections              Date
New Mexico Corrections Department



# NEW MEXICO
# CORRECTIONS DEPARTMENT

*"We commit to the safety and well-being of the people of New Mexico by doing the right thing, always."*
**C**ourage **R**esponsibility **E**thics **D**edication - **CRED**ibly serving the public safety of New Mexico

| ISSUE DATE: | 04/19/90 | REVIEWED: | 12/31/18 |
|---|---|---|---|
| EFFECTIVE DATE: | 04/19/90 | REVISED: | 02/21/18 |

**CD-176200**

TITLE:  **Clinical Practice Guideline and Disease Management Program**

**AUTHORITY:**

*Policy CD-176200*

**PROCEDURES: [4-4356]**

1. **Clinical Practice Guideline and Disease Management Program.** The contractor's regional medical director and the NMCD Health Services Administrator shall review and approve the protocol annually to ensure that the protocol is consistent with the most recent version of the BOP clinical practice guideline. Documentation of the annual review shall be kept on file in each facility's medical unit.

   Any deviation from the established protocols must be approved by a physician, documented in the offender's medical file, and supported by clinical evidence

2. **Screening.** Inmate shall be provided educational information on the transmission, natural history and medical management of HCV infection. The contract medical provider's qualified staff will perform and document this function on intake at the receiving and diagnostic unit (RDC).

   Identifying persons with chronic HCV infection requires screening asymptomatic persons, since the majority of persons with HCV are not ill. The Centers for Disease Control and Prevention (CDC) recommends screening persons at increased risk of infection, since identifying persons with HCV infection provides an opportunity for patient counseling, medical evaluation and treatment. Candidates for risk-based testing include inmates who:

   a. Were born between 1945 through 1965
   b. Have ever injected illegal drugs, including those who injected only once many years ago
   c. Received clotting factor concentrates made before 1987
   d. Received blood transfusions or solid organ transplants before July 1992
   e. Have ever received long-term hemodialysis treatment
   f. Had known exposures to HCV, such as:
      o Healthcare workers after needlesticks involving HCV-positive blood
      o Received blood or organs from a donor who later tested HCV-positive
   g. Have HIV infection
   h. Have signs or symptoms of liver disease (e.g., abnormal liver enzyme tests)
   i. Were born to HCV-positive mothers
   j. Have been on long-term hemodialysis
   k. Received tattoos or body piercings while incarcerated

Appendix 1, *Inmate Hepatitis Fact Sheet*, shall be distributed to all inmates by the contract medical provider's qualified staff at intake in the RDU. Based upon the information provided, the inmate may submit a health services request to receive a test to determine the presence of hepatitis infection.

Appendix 1, *Inmate Hepatitis Fact Sheet*, shall be made available to all inmates in the medical units. At any time during incarceration, may submit a health services request to receive testing.

3. **Testing.** In addition to the risk-based testing required in Section 2, "Screening," the contract medical provider shall routinely test inmates for HCV infection based on clinical indication including:

- signs and symptoms of hepatitis
- elevated ALT levels of unknown etiology
- concurrent infections with HIV or HBV
- presence of medical conditions strongly associated with HCV infection such as cryo-globulinemia, membranoproliferative glomerulonephritis, and porphyria cutanea tarda

Non-infected inmates on chronic hemodialysis should be screened for HCV infection by assaying ALT levels, monthly; and anti-HCV by immunoassay, semiannually.
Staff and inmates should be tested for HCV infection following percutaneous exposures to blood.

Tests for HCV infection should be performed by appropriately accredited laboratories, and ordered and interpreted by appropriately qualified health care providers in accordance with the established protocols, consistent with the BOP clinical practice guideline. The preferred screening test for HCV infection is an immunoassay that measures HCV antibodies. All positive results must be reported to the New Mexico Department of Health (NMDOH) as part of required notifiable condition reporting in New Mexico. Reporting must include patient name, date of birth, race/ethnicity, address, date of specimen collection and test type (e.g., antibody test, PCR test)

4. **Notification and Counseling.** All HCV-Ab positive patients must be notified and counseled concerning hepatitis C infection. During the course of evaluation via chronic care clinics, further counseling may be indicated and tailored to specific co-morbid conditions associated with the inmate's medical status. This counseling may include advice concerning management of depression, alcoholism, weight reduction if obese, control of diabetes, and control of other medical problems.

5. **Evaluation and Treatment.** Evaluation and treatment of hepatitis C shall be conducted in accordance with protocols established by the contract medical provider, consistent with the BOP clinical practice guideline and approved by the NMCD HSA prior to implementation.

Appendix 2, *Consent for Hepatitis C Evaluation and Treatment*, shall be completed prior to initiating treatment.

If the inmate declines evaluation and/or therapy, a refusal of treatment form should be completed, and signed by the medical provider and the inmate. The form should be faxed to the NMCD HSB administrator and the original placed in the inmate's medical file.

6.  **Compliance.** Compliance with this NMCD policy and the established Department approved disease management program will be monitored via routine and case-specific audits and record reviews conducted by the NMCD HSA.

_____      <u>12/31/18</u>
David Jablonski, Secretary of Corrections      Date
New Mexico Corrections Department

*CD-176201.1*
*Reviewed/Revised 02/21/18*

| **Hepatitis C Antiviral Treatment INFORMED CONSENT AND CONTRACT** |
|---|

Antiviral treatment of hepatitis C is reserved for those eligible patients who understand the commitment to therapy; will tolerate and comply with the course of treatment; and agree to avoid all activities which may worsen their liver disease or infect themselves or others with the hepatitis C virus.  If an inmate is considered for hepatitis C treatment the inmate must sign this contract prior to moving on thru Phase 1 work-up.

_____ I understand that the hepatitis C antiviral therapy may be of no benefit to me and that it may not eradicate my hepatitis C infection and that it may be discontinued because of side effects or failure.

_____ I have been informed about the possible  side effects of treatment of hepatitis C.

_____ I understand that I should be tested for HIV before treatment, as the presence of the HIV virus could seriously impact my hepatitis C infection and treatment.

_____ I understand that the course of treatment may continue for 8-24 weeks, depending on each individual's particular infection, and that periodic blood testing will be a necessary part of the hepatitis C antiviral treatment program.

_____ I understand that antiviral treatment of hepatitis C may cause side effects as described in the medication package insert. .

_____I understand and I agree to be treated for side effects of hepatitis C antiviral treatment if required.

_____ I understand that depending on the hepatitis C drugs I am prescribed for my particular infection, I may be instructed not to become pregnant, or attempt to impregnate my spouse, during my hepatitis C antiviral treatment, or for six (6) months after cessation of treatment.  I understand that I must use two (2) forms of birth control during sexual activity during and for six (6) months after antiviral treatment ends.

_____ I understand that my failure to comply with the treatment, or it's monitoring, will result in discontinuation of the antiviral treatment.

_____ I understand that alcohol and/or illicit drugs injure the liver and that drinking alcohol and using illicit drugs is forbidden, and if I am caught using alcohol or illicit drugs, therapy will be discontinued.

_____ I understand that I must abstain for any activity which permits exchange of body fluids which may transmit the hepatitis C virus, or other blood-borne pathogens.  This includes tattooing, sexual activity in prison, sharing needles and intranasal drug use.  If I am caught participating in any of these activities, antiviral treatment may be discontinued.

_____ I understand that proof of participation in a therapeutic community or outpatient substance abuse program as recommended may be required before antiviral treatment may be started.

_____ I understand that I will be required to undergo random blood or urine testing for substance abuse and that any positive test may result in discontinuation of, or loss or eligibility, for hepatitis C antiviral treatment.

_____ I understand that completion of this contract does not guarantee that I will be endorsed for hepatitis C antiviral treatment.

_____ Initialing above and my signature below signify my understanding of, and agreement to comply with, the requirements discussed and contract above.  I understand that failure to comply may result in loss of eligibility for hepatitis antiviral treatment, or discontinuation of treatment in progress.

_____        _____/_____/_____

Inmate signature                                                          Date

_____        _____/_____/_____        _____:_____
Provider Signature                                                       Date                                  Time

| | | | |
|---|---|---|---|
| | | | |
| **PATIENT NAME** | **NMCD #** | **DOB** | **FACILITY** |

*CD-176201.2*

*Reviewed/Revised 02/21/18*

# Hepatitis B and Hepatitis C

The liver is one of the most important organs in your body.  The liver is necessary for your survival.  It does many jobs.

- The liver is the largest solid organ in the body, about the size of a football
- The liver carries out a large number of critical jobs, including the changing of food into energy and nutrients needed to sustain life
- The liver also works to get rid of harmful substances such as alcohol, certain drugs and environmental toxins.  It eliminates these as well as other waste products from your body
- The liver makes bile to aid in digestion.

**Hepatitis B** is a liver disease caused by the hepatitis B virus (HBV).  It damages the liver and causes it to not work well.  Most people with hepatitis B recover within 6 months of exposure.  Those who don't recover are at risk of developing cirrhosis (scarring) of the liver, liver cancer, and liver failure.  Hepatitis B vaccine will protect you from getting infected.

**Hepatitis C** is a liver disease caused by the hepatitis C virus (HCV). It damages the liver and causes it to not work well.  Most people with hepatitis C will not recover on their own without treatment and will develop chronic (long term) hepatitis C which can lead to cirrhosis, liver cancer, and liver failure.  There is no vaccine for hepatitis C.

Some of the reasons to think you might be infected with hepatitis B or hepatitis C: Please check if the answer is yes.

---

- ☐ *Have you ever injected or inhaled drugs (even once)?*
- ☐ *Have you received a blood transfusion or organ transplant before July 1992?*
- ☐ *Did your mother have HBV or HCV when you were born?*
- ☐ *Do you have HIV?*
- ☐ *Have you ever had unprotected sex (sex without a condom or other latex barrier) with multiple partners, oral, vaginal and anal?*
- ☐ *Have you ever had a sexually transmitted disease (STD)?*
- ☐ *Have you ever had tattoos or body piercings?*
- ☐ *Were you born between 1945 and 1965 (HCV)?*
- ☐ *Have you ever lived with an infected person?*
- ☐ *Are you a man who has had sex with men?*

**If you answered yes to any of the questions you may be at increased risk of hepatitis B or hepatitis C infection and should consider getting a first test or repeat testing.**

---

**Stop the spread of hepatitis B and hepatitis C**

- Hepatitis B vaccination for people who have not been exposed is the best way to prevent infection
- Do not share razors, toothbrushes, or other personal items
- Do not share needles
- Do not share needles for tattoos or body piercings
- Do not have sex with other inmates

**Take care of yourself,**

♥ **Get Tested**
♥ **If you have not had hepatitis B ask for the hepatitis B vaccination**
♥ **If you have hepatitis B or C talk with your medical provider about the best plan to treat your disease.**
♥ **Be safe!**
→ Do not share razors, toothbrushes or personal items.
→ Do not have sex with other inmates
→ No tattoos or body piercings
→ Do not shoot drugs